1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   G.S.,                                Case No. 5:26-cv-00549-JWH-RAO

12              Petitioner,

13         v.                             **ORDER GRANTING
                                          PETITIONER'S *EX PARTE*
14   KRISTI NOEM, Secretary of U.S.       APPLICATION FOR TEMPORARY
          Department of Homeland Security, RESTRAINING ORDER [ECF**
15   PAMELA BONDI, Attorney General of    **No. 3]**
          the United States,
16   TODD M. LYONS, Acting Director,
          U.S. Immigration and Customs
17        Enforcement,
     JAIME RIOS, Field Office Director,
18        U.S. Immigration and Customs
          Enforcement, and
19   WARDEN, Desert View Annex,

20              Respondents.

21

22

23

24

25

26

27

28

Before the Court is the *ex parte* Application of Petitioner G.S.[1] for a
Temporary Restraining Order ("TRO") to enjoin Respondents Kristi Noem,
Pamela Bondi, Todd M. Lyons, Jaime Rios, and Warden of the Desert View
Annex from continuing to detain him.[2]  The Court concludes that this matter is
appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.
After considering the papers filed in support and in response,[3] the Court
**GRANTS** G.S.'s Application, for the reasons set forth below.

## I.  BACKGROUND

### A.    Factual Allegations

G.S., a native and citizen of India, entered the United States without
inspection on or about February 4, 2024.[4]  He was detained shortly thereafter by
United States Customs and Border Protection ("CBP") and placed into removal
proceedings.[5]  CBP then released G.S. on his own recognizance, concluding that
G.S. did not present a threat to public safety.[6]  G.S. subsequently filed an
application for asylum that remains pending, and, in September 2024, G.S. was
issued an employment authorization document that is valid for five years.[7]  Since
his release, G.S. has complied with all immigration requirements, and he has no

---

[1]    The Court granted G.S.'s request to proceed under that pseudonym.  *See*
Order Granting Pet.'s Mot. to Proceed with Pseudonym [ECF No. 11].

[2]    Pl.-Pet.'s *Ex Parte* Appl. for TRO (the "Application") [ECF No. 3]

[3]    The Court considered the documents of record in this action, including
the following papers:  (1) Application; (2) Resps.-Defs.' Response to the
Application (the "Response") [ECF No. 8]; (3) Pl.-Pet.'s Reply to the
Application (the "Reply") [ECF No. 10]; and (4) Pl.-Pet.'s Pet. (the
"Petition") [ECF No. 1].

[4]    Petition ¶ 19.

[5]    *Id.*

[6]    *Id.*

[7]    *Id.* at ¶¶ 20 & 22.

criminal record.[8]  At a routine check-in on January 20, 2026—nearly two years after G.S.'s release—Respondents arrested and detained G.S. without any notice or explanation.[9]  G.S. is currently detained at the Desert View Annex immigration detention center,[10] and he has not been provided with a bond hearing.[11]

**B.    Procedural History**

On February 6, 2026, G.S. filed both the instant Petition and the instant Application for a TRO.  In his Application, G.S. seeks the following relief:

- enjoining Respondents from moving him from this Court's jurisdiction;
- enjoining Respondents from continued to incarcerate G.S.;
- ordering Respondents to release him immediately;
- alternatively, ordering a bond hearing before a neutral arbiter within three days of the Order, in which the burden is on the Government to prove that G.S. is a flight risk or danger to the community;
- enjoining Respondents from confiscating and keeping G.S.'s documents and possessions, including his passport, driver's license, EAD, mobile phone, and any other items belonging to G.S., in order to return him to the status quo prior to Respondents' illegal re-detention;
- enjoining Respondents from placing additional impositions on G.S.'s liberty, such as electronic monitoring or excessive check-ins without proper pre-deprivation hearing and a showing of flight risk or danger to the community; and

---

[8]    *Id.* at ¶ 23.

[9]    *Id.* at ¶¶ 24 & 25.

[10]    *Id.* at ¶ 13.

[11]    *Id.* at ¶ 2.

- enjoining Respondents from re-detaining G.S. without providing at least seven-days' notice and a pre-deprivation bond hearing before a neutral arbiter for which petitioner's eligibility for bond must be considered, with the burden on the Government to determine flight risk and danger to the community.

## II.  LEGAL STANDARD

A TRO preserves the *status quo* and prevents irreparable harm until a hearing may be held on the propriety of a preliminary injunction.  *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction.  *See Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted).  An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them.  Fed. R. Civ. P. 65(d)(2).

A party seeking a TRO or a preliminary injunction must establish four elements:  "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction."  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir.), *as amended* (Mar. 11, 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  When the nonmoving party is a governmental entity, the last two *Winter* factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

If the court issues a TRO, it must also issue an order to show cause why a preliminary injunction should not issue.  *See* L.R. 65-1.

## III.  ANALYSIS

G.S. argues that Respondents violated his procedural Due Process rights by failing to provide him with a bond hearing as required by 8 U.S.C. § 1226(a) and by re-detaining him without any notice or explanation.  G.S. also asserts that Respondents' re-detention policy is arbitrary and capricious and, thus, that it violates § 706 of the Administrative Procedure Act (the "APA").  The Court concludes that G.S. satisfies the *Winter* factors with respect to both of his Due Process arguments and, therefore, that the issuance of a TRO is appropriate.[12]

### A.    Likelihood of Success on the Merits

Due process rights extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (citation modified)).  G.S. fits that description.

Thus, the outstanding question is "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  "The constitution typically requires some kind of a hearing before the State deprives a person of liberty or property, particularly because the loss of liberty cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (citation and quotation omitted).  When determining what procedures are required by Due Process, a district court applies the three-part *Mathews* test, which involves an analysis of the following:  (1) "the private interest" at

---

[12]    The Court does not address G.S.'s likelihood of success on his APA argument because it concludes that G.S.'s Due Process arguments are sufficient to support G.S.'s requested relief. *See Citibank, N.A. v. Mitchell*, 2024 WL 4906076, at *3 (N.D. Cal. Nov. 26, 2024) (noting that a "likelihood of success on even just one claim is sufficient [for injunctive relief] as long as that claim would support the injunctive relief sought").

stake; (2) "the risk of an erroneous deprivation" without additional procedures; and "the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### 1. Private Interest at Stake

When determining the private interest at stake, the court looks to the degree of potential deprivation. *See Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015). Here, the degree of potential deprivation is high because G.S. has been completely deprived of physical liberty. Because the degree of potential deprivation is high, this factor favors G.S.

### 2. Risk of Erroneous Deprivation

"[T]he risk of an erroneous deprivation [of liberty] is high" when the petitioner "has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). "Due Process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (citing *Zadvydas*, 533 U.S. at 690–94)). Here, Respondents took G.S. into immigration custody without notice or warning after he arrived for his check-in. Compounding that lack of process, Respondents have continued to deny G.S. a post-detention opportunity to contest his detention before a neutral decisionmaker. Without an initial justification for re-detention or a bond hearing on the merits, the risk of erroneous deprivation is high. Therefore, this factor favors G.S.

### 3. The Government's Interest

To determine the Government's interest, the Court must look at the function involved and the fiscal and administrative burdens imposed by the

-6-

additional procedures.  Here, the Court finds that the Government's interest in detaining G.S. without providing him with notice and a hearing is minimal because the effort and cost required to provide G.S. with those procedural safeguards is minimal.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Because the Government's burden is low, this factor favors G.S.

The Court, having found that all of the *Mathews* factors favor G.S., concludes that procedural Due Process requires a pre-deprivation notice of the reasons for re-detention and a post-deprivation hearing on the merits before an Immigration Judge.

The Court also notes that, as it and myriad other courts have held in this district, petitioners such as G.S., who are detained in the United States, are detained pursuant to 8 U.S.C. § 1226, and, thus, they have a statutory right to a bond hearing at the outset of their detention.  *See, e.g.*, *Pelaez Calderon v. Noem*, Case No. 5:25-cv-02633-JWH-AS (C.D. Cal. Oct. 24, 2025); *Arreola Armenta v. Noem*, Case No. 5:25-cv-02416-JFW-SP (C.D. Cal. Sept. 16, 2025); *Mosqueda v. Noem*, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Benitez v. Noem*, Case No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Ceja Gonzalez v. Noem*, Case No. 5:25-cv-2054-ODW-BFM (C.D. Cal. Aug. 13, 2025); and *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025).  Therefore, because G.S.'s instant detention is governed by 8 U.S.C. § 1226, he was entitled to—but did not receive—an individualized bond hearing at the outset of his re-detention.  That deprivation of an individualized bond hearing is an independent violation of G.S.'s statutory rights.  Furthermore, in the event that Respondents elect to re-detain G.S. with the required pre-deprivation due process, the bond hearing requirement set forth in 8 U.S.C. § 1226(a) applies, and Respondents must provide G.S. with a bond hearing at the outset of that detention.

1    Accordingly, because Respondents denied G.S. constitutionally and

2  statutorily required pre- and post-deprivation due process, the Court concludes

3  that G.S. is likely to succeed on the merits of his procedural Due Process claims.

4  **B.    Irreparable Harm**

5    G.S. has been detained without the procedures or notice required by the

6  Due Process Clause of the Constitution and the bond hearing required by 8

7  U.S.C. § 1226(a).  Thus, he has been deprived of process in a manner that likely

8  violates his constitutional rights.  "It is well established that the deprivation of

9  constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres*

10  *v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S.

11  347, 373 (1976)).  The Court finds that G.S. would be immediately and

12  irreparably harmed by the continued deprivation of his liberty without

13  constitutionally mandated due process.  *See Hernandez v. Sessions*, 872 F.3d 976,

14  994-95 (9th Cir. 2017) (finding that irreparable harm was likely to result from the

15  Government's policy of not considering financial ability to pay immigration

16  bonds); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013)

17  (finding that irreparable harm was likely to result from the Government's

18  reading of immigration detention statutes as not requiring a bond hearing for

19  noncitizens subject to prolonged detention).

20  **C.    Balance of Equities and Public Interest**

21    Because G.S. challenges actions and a policy that are likely in violation of

22  his constitutional rights, both the equities and the public interest favor the

23  issuance of a temporary restraining order.  *See Galvez v. Jaddou*, 52 F.4th 821,

24  832 (9th Cir. 2022) ("[N]either equity nor the public's interest are furthered by

25  allowing violations of federal law to continue.").  Furthermore, "[g]enerally,

26  public interest concerns are implicated when a constitutional right has been

27  violated, because all citizens have a stake in upholding the Constitution." *Zhang*

28

*v. Barr*, 612 F. Supp. 3d 1005, 1017 (C.D. Cal. 2020).  Accordingly, the Court concludes that both factors weigh in favor of G.S.

Thus, because the *Winter* factors all weigh in G.S.'s favor, the Court **GRANTS** G.S.'s Application.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. G.S.'s instant Application for a TRO [ECF No. 3] is **GRANTED**.

2. Respondents are **TEMPORARILY ENJOINED** from continuing to detain G.S.  Respondents are **DIRECTED** to release G.S. **FORTHWITH** under the terms and conditions of his existing release, as if G.S. had not been detained.  This Order does not provide G.S. with blanket immunity from future detention—that relief is likely beyond the Court's jurisdiction—but any future enforcement actions after release must comply with Due Process requirements.

3. Respondents are **DIRECTED** to return to G.S. at the time of his release all confiscated documents and possessions, including his passport, driver's license, EAD, and mobile phone, in order to return G.S. to the status quo prior to his January 20, 2026, detention.

4. Respondents are **TEMPORARILY ENJOINED** from removing G.S. or transferring him outside the Central District of California.

5. Respondents are **ORDERED** to **SHOW CAUSE** in writing no later than February 20, 2026, why the Court should not issue a preliminary injunction in this case.

6. G.S. is **GRANTED** leave to file an optional reply no later than February 24, 2026.

7. A hearing on the OSC re preliminary injunction is **SET** for February 27, 2026, at 11:00 a.m.  Counsel for all parties are **DIRECTED** to appear in person at that date and time in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

8.      This Temporary Restraining Order shall remain in effect until the conclusion of the hearing on February 27, 2026.

**IT IS SO ORDERED.**

Dated:_____
February 13, 2026

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE